WELLOGIX, INC.,                    §
                                   §
              Plaintiff,           §
                                   §
v.                                 §    CIVIL ACTION NO. H-14-741
                                   §
SAP AMERICA, INC., ET AL.,         §
                                   §
              Defendants.          §

## MEMORANDUM OPINION AND ORDER

Plaintiff Wellogix, Inc. ("Wellogix") brought this trade secrets action against SAP AG and SAP America, Inc. (collectively "SAP" or "Defendants"). Pending before the court is Defendants SAP America, Inc.'s and SAP AG's Motion for Summary Judgment ("Motion for Summary Judgment") (Docket Entry No. 8). For the reasons stated below, Defendants' Motion for Summary Judgment will be granted, and this case will be dismissed.

## I. Background

### A. Business Relationship

Wellogix develops software for the electronic procurement of goods and services by oil and gas operators.¹ This is commonly

---

¹Wellogix's Opposition to SAP America, Inc.'s and SAP AG's Motion for Summary Judgment ("Opposition to Motion for Summary Judgment"), Case No. H-14-741, Docket Entry No. 15, pp. 8-9. Page citations are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document. For a succinct summary of the background of this dispute see Facts and
(continued...)

referred to as electronic "Purchase to Pay" ("P2P") in the industry.[2] Traditionally, oil and gas companies planned drilling projects using paper records to track and pay costs.[3] Around 1998, Wellogix developed software that allowed oil companies to schedule and pay for complex services electronically.[4] According to Wellogix, it was the only firm offering such software from 2000 to 2005.[5] Wellogix did not offer a standalone solution, however, but implemented its technology through a series of pilot projects with partner firms.[6]

SAP, a potential partner, had an existing software solution providing electronic P2P functionality for the oil and gas industry, but it lacked the complex services functionality offered by Wellogix.[7] To facilitate integration of third-party software with its existing solution, SAP developed "middleware" software

---

[1](...continued)
Proceedings, Wellogix v. Accenture, L.L.P., 716 F.3d 867, 872-73 (5th Cir. 2013).

[2]Plaintiff's First Amended Complaint, Case No. G-8-119, Docket Entry No. 53, p. 3.

[3]Opposition to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 15, p. 7.

[4]Id.

[5]Wellogix, 716 F.3d at 873.

[6]Id.

[7]Plaintiff's First Amended Complaint, Case No. G-8-119, Docket Entry No. 53, pp. 5-6.

-2-

called "NetWeaver."[8] On March 15, 2005, Wellogix and SAP entered into the Powered by SAP NetWeaver Cooperation Agreement (the "NetWeaver Agreement"), which "permitted Wellogix, on a nonexclusive basis, to integrate its software with SAP's software through NetWeaver."[9]

In May of 2005, SAP and Wellogix pitched their integrated software to the consulting firm Accenture, which was working on behalf of BP to identify a global software provider for BP's operations.[10] "Without notifying Wellogix, Accenture and SAP began developing the complex services component of the global software for BP. As they developed the component, Accenture and SAP apparently accessed Wellogix technology . . . that had been uploaded to [a confidential] portal."[11] Wellogix alleges that "SAP used these misappropriated trade secrets for its own substantial financial benefit, profiting handsomely from technology it did not develop but which it fully incorporated into its own products."[12]

---

[9]Complaint for Declaratory Relief, Case No. H-10-1224, Docket Entry No. 1, pp. 3-4.

[9]Id.

[10]Wellogix, 716 F.3d at 873.

[11]Id.

[12]Opposition to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 15, p. 9.

-3-

## B. Trade Secrets Litigation and the 2008 Order

In May of 2008, Wellogix sued Accenture, BP, and SAP in Texas state court, and the case was removed to the Southern District of Texas, Galveston Division.[13] Wellogix asserted multiple causes of action, including breach of a partnership agreement by SAP, breach of fiduciary duty by SAP and Accenture, fraud by SAP, negligent misrepresentation by SAP, tortious interference with contract and prospective business relationships by SAP, Accenture, and BP, and theft of trade secrets by SAP, Accenture, and BP.[14] Judge Keith B. Ellison presided over the case.

Wellogix's claims against BP were arbitrated before Judge Ellison, who found that BP breached its confidentiality agreement with Wellogix by making Wellogix's confidential information accessible to Accenture and SAP.[15] Wellogix's suit against Accenture proceeded to trial.[16] The jury found for Wellogix, awarding $26.2 million in compensatory damages and $68.2 million in punitive damages.[17]

---

[13] See Notice of Removal, Case No. G-8-119, Docket Entry No. 1.

[14] See Plaintiff's First Amended Complaint, Case No. G-8-119, Docket Entry No. 53, pp. 11-30.

[15] Wellogix, 716 F.3d at 874.

[16] Id.

[17] Id. Ultimately, Wellogix accepted a remittitur of the punitive damages to $18.2 million, the amount it sought at trial. Id.

-4-

Relevant to the present case, Wellogix's trade secrets claims against the SAP defendants were dismissed pursuant to a forum-selection clause in the NetWeaver Agreement.[18] In a December 8, 2008, Memorandum and Order (the "2008 Order"), Judge Ellison held that the clause, which specified Frankfurt, Germany, as "[t]he place of jurisdiction for all disputes arising between the parties out of or in connection with [the NetWeaver Agreement]," was mandatory and enforceable,[19] and that all of Wellogix's claims against SAP AG and SAP America would have to be decided in Germany.[20]

## C.  Patent Declaratory Judgment Action

On April 15, 2010, SAP America filed a Complaint for Declaratory Relief against Wellogix, Inc. and Wellogix Technology Licensing LLC (the "Declaratory Judgment Action"), which was assigned to the undersigned judge.[21]  SAP sought a declaration of noninfringement and invalidity of five Wellogix patents.[22]  In July of 2010, SAP filed *inter partes* requests for reexamination of

---

[18]See Memorandum and Order, Case No. G-8-119, Docket Entry No. 54.

[19]Id. at 5-16.

[20]Id. at 16.

[21]Complaint for Declaratory Relief, Case No. H-10-1224, Docket Entry No. 1.

[22]Id. at 8-14. SAP later filed another declaratory judgment action, Case No. H-11-2840, which added a sixth Wellogix patent. It was consolidated into the pending Declaratory Judgment Action. See Order, Case No. H-10-1224, Docket Entry No. 72.

Wellogix's patents with the United States Patent Office ("PTO").[23]
SAP then moved to stay the Declaratory Judgment Action pending the
outcome of the PTO reexamination.[24] Wellogix counterclaimed in the
Declaratory Judgment Action for infringement of the same patents.[25]
On January 4, 2011, the court stayed the Declaratory Judgment
Action, pending reexamination.[26]

At a hearing on March 14, 2014, counsel for all parties agreed
that the patent review process could take an additional six to
eighteen months to complete.[27] In order to allow Wellogix to file
an amended answer and counterclaims alleging theft of trade
secrets, the court lifted the stay and directed Wellogix to file
its amended answer and a motion to sever the trade secrets
counterclaims into a new case.[28] On March 19, 2014, Wellogix filed
its amended answer and counterclaims for patent infringement and
theft of trade secrets.[29] Wellogix moved to sever its trade secrets

---

[23]Notice of Filing of Requests for Reexamination, Case No. H-
10-1224, Docket Entry No. 21.

[24]SAP America, Inc.'s Motion to Stay Pending Reexamination,
Case No. H-10-1224, Docket Entry No. 30.

[25]Defendants Wellogix, Inc. and Wellogix Technology Licensing's
Amended Answer and Counterclaims, Case No. H-10-1224, Docket Entry
No. 38, pp. 9-43.

[26]Order, Case No. H-10-1224, Docket Entry No. 63.

[27]See Transcript of Proceedings, Case No. H-10-1224, Docket
Entry No. 112, pp. 4-5.

[28]Id. at 5-8.

[29]Defendants Wellogix, Inc. and Wellogix Technology Licensing's
(continued...)

-6-

counterclaims, the motion was granted, and on March 21, 2014, the counterclaims were docketed as Civil Case No. H-14-741.[30] SAP then moved for summary judgment on Wellogix's trade secrets claims.[31]

## II. **Analysis**

Wellogix's counterclaims against SAP America, Inc. and SAP AG allege misappropriation of trade secrets under Texas common law and theft of trade secrets in violation of the Texas Penal Code, which is made actionable under the Texas Theft Liability Act ("TTLA"). The common law claim is nearly identical to the claim that was dismissed by Judge Ellison in 2008.[32] The TTLA claim stems from the same incident.[33] Defendants have moved for summary judgment on the grounds that Wellogix's claims are barred

---

[29](...continued)
Amended Answer and Amended Counterclaims, Case No. H-10-1224, Docket Entry No. 104; see also Case No. H-14-741, Docket Entry No. 1.

[30]Counter-Plaintiff Wellogix, Inc.'s Motion for Severence, Case No. H-10-1224, Docket Entry No. 105; Order on Wellogix, Inc.'s Motion for Severance, Case No. H-10-1224, Docket Entry No. 106; Defendants Wellogix, Inc. and Wellogix Technology Licensing's Amended Answer and Amended Counterclaims, Case No. H-14-741, Docket Entry No. 1.

[31]Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 8.

[32]Compare Defendants Wellogix, Inc. and Wellogix Technology Licensing's Amended Answer and Amended Counterclaims, Case No. H-14-741, Docket Entry No. 1, pp. 45-46 ¶¶242-249, with Plaintiff's First Amended Complaint, Case No. G-8-119, Docket Entry No. 53, pp. 23-24 ¶¶102-106

[33]See Defendants Wellogix, Inc. and Wellogix Technology Licensing's Amended Answer and Amended Counterclaims, Case No. H-14-741, Docket Entry No. 1, p. 46 ¶¶247-249.

by claim preclusion and issue preclusion, or, alternatively, that they should be dismissed for *forum non conveniens* pursuant to the forum-selection clause in the NetWeaver Agreement. Because the court is persuaded that Wellogix's counterclaims should be dismissed pursuant to the forum-selection clause and that the relevant portions of Judge Ellison's 2008 Order are issue preclusive, only these grounds are addressed in detail.

## A. Legal Standard

A federal court applies the federal law of *forum non conveniens* in deciding a motion to dismiss pursuant to a forum-selection clause pointing to a state or foreign forum. Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 580 (2013). The doctrine of *forum non conveniens* enables a district court, at its discretion, to decline to exercise jurisdiction "if the moving party establishes that the convenience of the parties and the court and the interests of justice indicate that the case should be tried in another forum." Karim v. Finch Shipping Co., 265 F.3d 258, 268 (5th Cir. 2001). Indeed, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." Koster v. (American) Lumbermens Mut. Cas. Co., 67 S. Ct. 828, 834 (1947). Because a valid forum-selection clause "represents the parties' agreement as to the most proper forum" and the overarching

consideration is whether dismissal would promote the "interest of justice," a valid forum-selection clause should be given controlling weight "in all but the most exceptional cases." Atlantic Marine, 134 S. Ct. at 581 (internal quotation marks and citations omitted).

## B.  SAP has not waived its right to enforce the forum-selection clause.

As an initial matter, Wellogix argues that SAP has waived its rights under the forum-selection clause by filing the Declaratory Judgment Action in the Southern District of Texas.[34] SAP argues that it has not.[35] The parties have cited a smattering of cases from various federal jurisdictions, but they have ignored a key threshold issue: What law governs a finding of waiver in this context?

Wellogix relies on Supreme Court precedent for the "well-established law that a party waives all of its potential objections to a venue with respect to any counterclaims filed by a defendant when it chooses to bring suit in a forum where it

---

[34]Opposition to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 15, pp. 19-29.

[35]Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 8, pp. 27-31; Defendants SAP America, Inc.'s and SAP AG's Reply Brief in Support of Their Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 16, pp. 4-10.

could not otherwise be sued."[36] See Gen. Elec. Co. v. Marvel Rare Metals, 53 S. Ct. 202, 204 (1932). That case held that patent-specific venue provisions of the Judicial Code did not apply to counterclaims and, therefore, that a plaintiff who sues on a patent in a district in which he would not otherwise be subject to venue consents to that venue for other issues of the case, "including those pertaining to a counterclaim praying that he be restrained from infringing a patent of the defendant." Id. SAP does not contest the propriety of this court hearing Wellogix's patent counterclaims in the Declaratory Judgment Action.

While Wellogix contends that "[c]ourts have applied this rule to hold that parties have waived forum selection clauses by initiating litigation,"[37] it has identified only one case in eighty years that did so, Jalin Realty Capital Advisers, LLC v. A Better Wireless, NISP, LLC, No. 11-165 (JRT/LIB), 2012 WL 838439, at *3 (D. Minn. Mar. 12, 2012).[38] Nevertheless, many federal courts have held, as a general matter, that a contracting party can waive a forum-selection clause, thereby relieving the other party of any obligation to file suit in the originally specified forum. See, e.g., Innovative Display Techs. LLC v. Microsoft

---

[36]Opposition to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 15, p. 20.

[37]Id. at 21.

[38]The other cases Wellogix cites are either inapposite, see id. at 20-21, or apply New York state law, see id. at 21-22.

-10-

Corp., No. 2-13-783, 2014 WL 2757541, at *5 (W.D. Tex. Jun 17, 2014). SAP responds that "Wellogix entirely ignores the touchstone of the waiver inquiry: that a party cannot waive its forum-selection clause right[] unless that party possessed an actual intent to relinquish that right."[39] Although there is some support for this proposition, the correct source of the governing rule remains unclear.

The *enforceability* of a forum-selection clause in federal court is governed by federal law, regardless of the basis for federal jurisdiction. Haynsworth v. The Corporation, 121 F.3d 956, 962 (5th Cir. 1997); see also Jumara v. Sate Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995) ("Because questions of venue and the enforcement of forum-selection clauses are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of Erie.") (internal quotation marks and citations omitted). While there is still considerable confusion as to what body of law applies to the *interpretation* of a forum-selection clause, there is some consensus that the court should apply the law that governs the rest of the contract. See Martinez v. Bloomberg LP, 740 F.3d

---

[39]Defendants SAP America, Inc.'s and SAP AG's Reply Brief in Support of their Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 16, p. 8 (internal quotation marks and citation omitted).

211, 222-23 (2d Cir. 2014) (reviewing cases from several circuits).

Like interpreting a forum-selection clause, determining waiver of a forum-selection clause is arguably a matter of substantive contract law to be governed by the law applicable to the rest of the contract. Cf. CK DFW Partners Ltd. v. City Kitchens, Inc., No. 3-6-1598, 2007 WL 2381259, at *2 n.8 (N.D. Tex. Aug 17, 2007) ("Although federal law governs the enforceability of an otherwise valid forum selection clause, threshold questions concerning whether a forum selection clause is triggered or is somehow nullified under the other terms of the contract is a question governed by the applicable state law."); Martinez, 740 F.3d at 221 ("In construing a forum selection clause, a court may confront a wide range of contract law issues . . . . Erie warns against an approach that would force federal courts to generate a sprawling 'federal general common law' of contracts to govern such questions whenever they arise in the context of forum selection clauses.").

In the arbitration context, the Fifth Circuit holds that waiver is to be addressed as a matter of federal law. See, e.g., Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 n.4 ("The issue of arbitrability under the United States Arbitration Act is a matter of federal substantive law. We thus dismiss out of hand FWDC's citation of 60 Tex. Jur. 2d 199 for

-12-

the proposition[] that waiver is a question of fact based largely on intent.") (internal quotation marks and citations omitted).

When addressing waiver of a forum-selection clause, however, the Fifth Circuit applied Texas law and concluded that waiver requires an intent to relinquish a known right.[40] See GP Plastics Corp. v Interboro Packaging Corp., 108 F. App'x 832, 836 (5th Cir. 2004) (per curium) (unpublished) (citing Two Thirty Nine Joint Venture v. Joe, 60 S.W.3d 896, 904 (Tex. App.—Dallas 2001), rev'd, 145 S.W.3d 150 (Tex. 2004).[41]

Authorities cited by Wellogix also rely on state law to determine what constitutes waiver. See Unity Creations, Inc. v. Trafcon Indus. 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001) ("In New York, when a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause on the claims it pursues."); Dart Mech. Corp. v. Johnson Controls, Inc., No. 13-CV-2941(JS)(WDW), 2013 WL 5937424,

---

[40]The court did not specify whether or why state or federal law should control the issue.

[41]The Dallas Court of Appeals in Two Thirty Nine Joint Ventures recited the elements of waiver, but it was in the context of waiving a conflict of interest, not a waiver of contractual rights or a forum-selection clause. 60 S.W.3d at 911. But see Johnson v. Structured Asset Servs., LLC, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.) ("In order to establish a waiver of rights under a contract, there must be proof of an intent to relinquish a known right."); In re EPIC Holdings, Inc., 985 S.W.2d 41, 57 (Tex. 1998) ("Waiver is an affirmative defense . . . . Waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right.").

-13-

at \*2 (E.D.N.Y. Nov. 4, 2013) (citing cases that applied New York law).

If federal law governs, the court has found no controlling cases on point and would therefore defer to the intent requirement articulated in GP Plastics and other cases in this district.[42] If the law applicable to the contract governs, this case presents two additional complications: First, the NetWeaver Agreement specifies that it is to be governed and construed in accordance with German law.[43] However, Wellogix has neither invoked the choice-of-law clause nor shown how SAP waived its rights under German law. Not having been formally invited, the

---

[42]Other courts in this district have required intent to waive a forum-selection clause, though the source of the governing rule remains unclear. See Texas Cmty. Bank, N.A. v. Dunn, No. H-9-3514, 2010 WL 3220652, at \*2 n.1 (S.D. Tex. Aug. 13, 2010) (finding defendant's waiver argument "unpersuasive" because plaintiff "did not 'intentionally relinquish' its rights under the forum-selection clause.") (no citation in original); Bancroft Life & Sax. ICC, Ltd. v. Davnic Ventures, L.P., No. H-12-2015, 2013 WL 1222112, at \*2 (S.D. Tex. Mar. 25, 2013) ("'For waiver to occur, there must be an existing right, knowledge of its existence, and either an actual intention to relinquish that right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.'") (quoting N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc., 513 F.3d 466, 470 (5th Cir. 2007) (citing Steptore v. Masco Const. Co., 643 So. 2d 1213, 1215 (La. 1994))). The Seventh Circuit has also held that waiver of a forum-selection clause requires "voluntary or intentional relinquishment of a known right." Haber v. Biomet, Inc., 578 F.3d 553, 558 (7th Cir. 2009). For authority, the court quoted a Seventh Circuit ERISA case, Vershaw v. Nw. Nat. Life Ins. Co., 979 F.2d 557, 560 (7th Cir. 1992), which in turn quoted a Fifth Circuit ERISA case, Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991).

[43]Powered by SAP NetWeaver Cooperation Agreement, Exhibit A to Motion for Summary Judgment, Docket Entry No. 8-2, p. 13 ¶15.2.

-14-

court declines to venture further down this road. Cf. Int. Admins., Inc. v. Life Ins. Co. of N.A., 753 F.2d 1373, 1376 n.4 (7th Cir. 1985) ("Although we are not certain that Illinois law would apply to every issue, were the question properly argued, we are certain that it is not the job of the trial judge to do the parties' work for them."). Second, the Texas Supreme Court has adopted a specific test to determine whether a party has waived a forum-selection clause, and it differs from the waiver test cited in GP Plastics. See In re ADM Investor Servs., Inc., 304 S.W.3d 371, 374 (Tex. 2010) ("A party waives a forum-selection clause by substantially invoking the judicial process to the other party's detriment or prejudice."). The parties have not addressed these issues; they simply disagree as to whether GP Plastics is distinguishable. Ultimately, the court concludes that SAP has not waived its rights under either the GP Plastics approach or the In re ADM approach.

GP Plastics holds that waiver of a forum-selection clause requires an intent to relinquish rights under the contract. 108 F. App'x at 836-37. There is no evidence that SAP intended to waive its rights under the forum-selection clause in this case. In fact, SAP's complaint in the Declaratory Judgment Action demonstrates an intent not to relinquish the relief granted by Judge Ellison in 2008:

-15-

## SPECIFIC RELIEF NOT REQUESTED

> SAP does not request any additional relief with
> respect to the claims adjudicated in [Judge Ellison's
> December 2008 Memorandum and Order] beyond that which
> has already been granted to SAP, all such claims being
> separate and distinct from the non-infringement and
> invalidity of the Wellogix Patents.[44]

The court therefore concludes that SAP did not intentionally
relinquish its rights under the forum-selection clause.

In re ADM holds that a party waives a forum-selection clause
by substantially invoking the judicial process to the other
party's detriment or prejudice, but that there is a strong
presumption against such waiver.[45] 304 S.W.3d at 374. Wellogix
has not shown how it suffered any detriment or prejudice with
respect to its trade secrets claims as a result of SAP's
Declaratory Judgment Action in this forum.[46] The court therefore

---

[44]Complaint for Declaratory Relief, Case No. H-10-1224, Docket
Entry No. 1, p. 14.

[45]The Fifth Circuit applies a similar test under federal law
in the arbitration context: "Although waiver of arbitration is a
disfavored finding, '[w]aiver will be found when the party seeking
arbitration substantially invokes the judicial process to the
detriment or prejudice of the other party.'" Nicholas v. KBR,
Inc., 565 F.3d 904, 907 (5th Cir. 2009) (citation omitted).
"Prejudice in the context of arbitration waiver refers to delay,
expense, and damage to a party's legal position." Id. at 910.

[46]As Wellogix has stated, "the theft of trade secret claims
stand completely independent of the patent claims." Wellogix, Inc.
and Wellogix Technology Licensing, L.L.C.'s Renewed Motion to Lift
Stay and Request for Entry of Scheduling Order, Case No. H-10-1224,
Docket Entry No. 98, p. 3 ¶6. Judge Ellison was of the same
opinion when, in 2010, he denied Wellogix's motion to consolidate
the patent action with the then-pending trade secrets claims
(continued...)

-16-

concludes that SAP has not waived its rights under the In re ADM approach.[47]

## C.   The forum-selection clause is mandatory and enforceable with respect to Wellogix's trade secrets claims.

SAP argues that Judge Ellison's 2008 Order dismissing Wellogix's trade secrets claims precludes Wellogix from challenging the enforcement of the forum-selection clause in this action.[48]  Wellogix does not contest the preclusive effect of Judge Ellison's order, except to argue that the trade secrets claims are outside the scope of the forum-selection clause and that this issue was not litigated before Judge Ellison.[49]  The court concludes that Judge Ellison's 2008 Order is entitled to full preclusive effect as to the enforceability of the forum-selection clause.  Because the scope of the clause was not fully litigated before Judge Ellison, however, the court will address that issue.

---

[46] (...continued)
against Accenture.  See Memorandum and Order, Case No. G-8-119, Docket Entry No. 203, pp. 3-5.

[47] Because Wellogix has failed to establish that SAP waived any rights under the forum-selection clause, and neither party seeks to enforce the clause in the Declaratory Judgment Action, the court need not address whether the patent claims fall within the scope of the forum-selection clause.

[48] Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 8, pp. 19-24.

[49] See Opposition to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 15, pp. 24-25.

## 1. Wellogix's trade secrets claims are within the scope of the forum-selection clause.

Before a court can consider enforcing a forum-selection clause, it must first determine whether the clause applies to the type of claims asserted in the lawsuit. Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 616 (5th Cir. 2007). SAP argues that Judge Ellison decided this issue in 2008 and that his order has preclusive effect. Wellogix argues that the issue was not actually litigated before Judge Ellison.

Once a court has decided an issue of fact or law necessary to its judgment in a case, the doctrine of collateral estoppel precludes parties from relitigating that issue in a subsequent case involving a party to the first. Allen v. McCurry, 101 S. Ct. 411, 414 (1980). "In this circuit, collateral estoppel applies when a previously litigated issue of law or fact was [1] identical to the present issue, [2] actually litigated, [3] necessary to a final judgment, and [4] reviewed under the same standard as the present issue." Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc., 448 F.3d 825, 829 (5th Cir. 2006).

Here, the parties appear not to have "actually litigated" the scope of the forum-selection clause before Judge Ellison. Although Wellogix arguably conceded that its trade secrets claims

arose out of the NetWeaver Agreement,[50] concessions and stipulations do not necessarily have issue-preclusive effect. See Martin v. Trend Personnel Servs., No. 3:13-CV-3953-L, 2014 WL 2894440, at *4 (N.D. Tex. June 26, 2014); 18A Fed. Prac. & Proc. Juris. § 4443 (2d ed.). Even if resolution of the issue was logically necessary to Judge Ellison's decision, the scope of the clause was neither briefed by the parties nor fully addressed in Judge Ellison's Order. Although it is a close question, because the court reaches the same conclusion as Judge Ellison there is no reason to decide the preclusive effect of the Order on this issue.

To determine whether a claim falls within the scope of a forum-selection clause, a court looks to the language of the contract. Braspetro, 240 F. App'x at 616 (citing Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 222 (5th Cir. 1998)). As with the potential waiver of a forum-selection clause, a threshold issue here is what law to apply. The Fifth Circuit has applied federal law in this context, drawing on maritime and diversity cases in this and other circuits. See, e.q., id. Despite the choice-of-law clause in the NetWeaver Agreement, the

---

[50]See Wellogix, Inc.'s Response in Opposition to SAP America, Inc., SAP A.G. and Manfred Heil's Motion to Dismiss for Improper Venue, Case No. G-8-119, Docket Entry No. 22, p. 7 ("Plaintiff has pled that SAP A.G. has misappropriated confidential information and misappropriated trade secrets. These claims arise under both the Content Certification Agreement (Pennsylvania clause) as well as the [NetWeaver] Agreement (Germany clause).")

parties also rely on federal law. This court will do the same.

See Phillips v. Audio Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007) ("We will assume from the parties' briefing that they do not rely on any distinctive features of [the contractually selected] law and apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause.").

The forum-selection clause in the NetWeaver Agreement states:

> The Agreement shall be governed and construed in accordance with the laws of the Federal Republic of Germany. The UNICITRAL purchase law shall not apply. The place of jurisdiction for all disputes arising between the parties out of or in connection with this Agreement shall be Frankfurt, Germany.[51]

"The scope of a forum-selection clause is not limited solely to claims for breach of the contract that contains it." MaxEn Capital, LLC v. Sutherland, No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009). In a forum-selection clause, "[t]he term 'arising' is generally interpreted as indicating a causal connection." Braspetro, 240 F. App'x at 616. Clauses that extend only to disputes "arising out of" a contract are construed narrowly, while clauses extending to disputes that "relate to" or "are connected with" the contract are construed broadly.

---

[51]Powered by SAP Netweaver Cooperation Agreement, Exhibit A to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 8-2, p. 13 ¶15.2.

<u>Blueskygreenland Envtl. Solutions, LLC v. Rentar Envtl.</u>

<u>Solutions, Inc.</u>, No. H-11-1745, 2011 WL 6372842, at *4 (S.D. Tex. Dec. 20, 2011). Thus, the phrase "arising in connection with" has been found to reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." <u>Simula, Inc. v.</u> <u>Autoliv, Inc.</u>, 175 F.3d 716, 721 (9th Cir. 1999). Such a clause encompasses not only contract claims, but also statutory and common law trade secrets claims "in connection with" the agreement. <u>Id.</u> at 724-25.[52]

Beginning with the first substantive paragraph of Wellogix's trade secrets counterclaim, it is clear that this is "a dispute[] arising between the parties out of or in connection with [the NetWeaver Agreement]":

> Wellogix took reasonable steps to keep its technology and other confidential information as trade secrets and would not have disclosed its trade secrets to any party without agreement by the receiving party to keep them secret. The SAP Parties, through their confidential and fiduciary relationships with Wellogix, acquired access to Wellogix's trade secrets. By

---

[52]While some of these cases deal with arbitration clauses, the scope given to the phrase should not differ for purposes of a forum-selection clause. <u>Omron Healthcare, Inc. v. Maclaren Exports</u> <u>Ltd.</u>, 28 F.3d 600, 603 (7th Cir. 1994); <u>see also</u> Opposition to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 15, p. 23 n.4 ("Cases involving arbitration clauses are broadly applicable to disputes about forum-selection clauses, because an agreement to arbitrate before a specific tribunal is considered by courts to be nothing more than a 'specialized kind of forum-selection clause.'" (quoting <u>Scherk v. Alberto-Culver Co.</u>, 94 S. Ct. 2449, 2457 (1974))).

acknowledging and agreeing that Wellogix had valuable
trade secrets, the SAP Parties owed a duty not to use or
disclose these trade secrets without Wellogix's
permission. The SAP Parties, without permission or legal
authority from Wellogix, misappropriated this highly
valuable technology in order to obtain and perform under
various agreements with its other business partners and
customers. As a direct result of this misappropriation
of trade secrets, Wellogix has been damaged and the SAP
Parties have profited.[53]

Case law cited by Wellogix supports this conclusion as well.

In arguing that SAP's patent claims against Wellogix also fall

within the scope of the forum-selection clause, an issue the

court need not reach, Wellogix relies primarily on Omron

Healthcare, Inc. v. Maclaren Exports Ltd., 28 F.3d 600 (7th Cir.

1994). In Omron, the Seventh Circuit recognized that a test of

but-for causation would be overly broad, and it held that "all

disputes the resolution of which arguably depend on the

construction of the agreement 'arise out of' that agreement" for

purposes of a forum-selection clause. Id. at 603. The phrase

"arise out of" is narrower than the language in the NetWeaver

Agreement. Nevertheless, since the NetWeaver Agreement governs

---

[53]Defendants Wellogix, Inc. and Wellogix Technology Licensing's
Amended Answer and Amended Counterclaims, Case No. H-14-741, Docket
Entry No. 1, p. 45 ¶243; see also Plaintiff's First Amended
Complaint, Case No. G-8-119, Docket Entry No. 53, p. 6 ¶25 ("As
part of this agreement, after its execution on or about March 22,
2005 through March 24, 2005, several SAP/SAP A.G. employees went to
Wellogix's offices for a three-day workshop wherein Wellogix
disclosed highly confidential information and trade secrets."
(emphasis added)).

the confidentiality of Wellogix's trade secrets,[54] the resolution

of Wellogix's claims "arguably depends" on construction of the

NetWeaver Agreement. Those claims would therefore also fall

within the scope of the forum-selection clause under the Omron

test.

## 2. The clause is mandatory, and it applies to both defendants.

"A party's consent to jurisdiction in one forum does not

necessarily waive its right to have an action heard in another."

City of New Orleans v. Mun. Admin. Servs., Inc., 376 F.3d 501,

504 (5th Cir. 2004). "For a forum selection clause to be

exclusive, it must go beyond establishing that a particular forum

will have jurisdiction and must clearly demonstrate the parties'

intent to make that jurisdiction exclusive." Id. Therefore, to

be enforceable, a forum-selection clause must be mandatory, not

just permissive. Caldas & Sons, Inc. v. Willingham, 17 F.3d 123,

127-28 (5th Cir. 1994). Judge Ellison determined that the forum-

selection clause in the NetWeaver Agreement is mandatory.[55] Judge

Ellison also determined that the forum-selection clause applies

---

[54]Powered by SAP Netweaver Cooperation Agreement, Exhibit A to Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 8-2, p. 10 ¶¶12.1-12.2; see also Plaintiff's First Amended Complaint, Case No. G-8-119, Docket Entry No. 53, p. 6 ¶24 ("SAP/SAP A.G. is required under the NetWeaver Partner Agreement to strictly maintain the confidential information and trade secrets of Wellogix.")

[55]Memorandum and Order, Case No. G-8-119, Docket Entry No. 54, pp. 5-9.

to claims against both SAP AG, which was a signatory to the Agreement, and SAP America, which was not.[56] The parties do not dispute the preclusive effect of these findings.

## 3. The clause is enforceable.

Prior to the Supreme Court's decision in Atlantic Marine, courts in this and other circuits enforced forum-selection clauses under the standard articulated in M/S Bremen v. Zapata Off-Shore Co., 92 S. Ct. 1907 (1972). Under the Bremen standard, forum-selection clauses are prima facie valid and will be enforced unless the resisting party proves that enforcement is unreasonable. Id. at 1913.[57] A resisting party can show unreasonableness by establishing a number of relevant factors.[58] However, that party bears a "heavy burden of proof." Bremen, 92 S. Ct. at 1917.

---

[56] Id. at 14–16.

[57] Although Bremen was an admiralty case, this and other circuits have applied it in diversity and federal question cases as well. Haynsworth v. The Corporation, 121 F.3d 956, 962 & n.10 (5th Cir. 1997).

[58] To show that a forum-selection clause is unreasonable, the resisting party must prove: "(1) the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." Id. at 963 (citing Carnival Cruise Lines, Inc. v. Shute, 111 S. Ct. 1522, 1528 (1991); Bremen, 92 S. Ct. at 1914–15, 1916, 1917).

-24-

After Atlantic Marine, forum-selection clauses must be "given controlling weight in all but the most exceptional cases," 134 S. Ct. at 579 (internal quotation marks and citation omitted), because in "all but the most unusual cases . . . the 'interest of justice' is served by holding parties to their bargain," id. at 583.[59]

As the Second Circuit has observed, Atlantic Marine "did not address the extent to which the 'interest of justice' test . . . resembles the test developed under Bremen." Martinez, 740 F.3d at 219. Although there is still some uncertainty as to whether the Bremen factors remain relevant, courts continue to apply them. See, e.g., id. at 228; Emrit v. Watts, Guerra, L.L.P., No. SA-13-CV-00473-XR, 2014 WL 3970172, at *2 (W.D. Tex. Aug. 13, 2014)("Assuming, for the sake of argument, that these factors all remain relevant post-Atlantic Marine . . . ."); 1-Stop Fin. Serv. Centers of Am., LLC v. Astonish Results, LLC, No. A-13-CA-961-SS, 2014 WL 279669, at *6-*7 (W.D. Tex. Jan. 23, 2014) (applying

---

[59] The Court in Atlantic Marine established this standard for motions to transfer under § 1404(a), which permits a transfer "in the interest of justice." However, the court stated that "Section 1404(a) is merely a codification of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." Atlantic Marine, 134 S. Ct. at 580. The Court made clear that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or federal forums." Id. at 583 n.8; see also Emrit v. Watts, Guerra, L.L.P., No. SA-13-473, 2014 WL 3970172, at *1 n.5 (W.D. Tex. Aug 13, 2014) ("[T]here is no doubt that Atlantic Marine controls the outcome of this case.").

balancing-of-interest factors but also addressing
unreasonableness argument under <u>Bremen</u> standard).

Judge Ellison applied the <u>Bremen</u> standard, and he held that
the forum-selection clause was enforceable.[60] To the extent that
the <u>Bremen</u> standard is still applicable and dispositive, the
court gives Judge Ellison's ruling full preclusive effect.
Furthermore, since Wellogix has made no showing that this is an
"exceptional" or "most unusual" case, the clause is also
enforceable under <u>Atlantic Marine</u>.

## D.   **Wellogix's claims should be dismissed for *forum non conveniens*.**

Following <u>Atlantic Marine</u>, a forum-selection clause that
points to a nonfederal forum must be evaluated under the doctrine
of *forum non conveniens*, including a balancing-of-interests
analysis. <u>Atlantic Marine</u>, 134 S. Ct. at 581-83. Because Judge
Ellison's 2008 Order ruled on a 12(b)(3) motion and did not apply
a *forum non conveniens* analysis,[61] the court must now do so.

Under a traditional *forum non conveniens* analysis, the court
conducts a two-step inquiry. First, the court must establish the
existence of an alternative forum in which the case may be
brought. <u>Piper Aircraft Co. v. Reyno</u>, 102 S. Ct. 252, 265 n.22

---

[60]<u>See</u> Memorandum and Order, Case No. G-8-119, Docket Entry No.
54, pp. 6 n.2, 9-14.

[61]<u>See</u> <u>id.</u> at 4-5.

-26-

(1981). Such a forum must be both available and adequate. In re
Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1165
(5th Cir.1987), vacated on other grounds sub nom. Pan Am. World
Airways, Inc. v. Lopez, 109 S. Ct. 1928 (1989), reinstated except
as to damages by In re Air Crash Disaster Near New Orleans, La.,
883 F.2d 17 (5th Cir. 1989). "If an alternative forum is both
available and adequate, the district court must then weigh
various private and public interest factors to determine whether
dismissal is warranted." Saqui v. Pride Cent. Am., LLC, 595 F.3d
206, 211 (5th Cir. 2010).

1.    Availability

"An alternative forum is available when the entire case and
all parties can come within the jurisdiction of that forum." Id.
(internal quotation marks and citation omitted). "A defendant's
submission to the jurisdiction of a foreign forum sufficiently
satisfies the availability requirement." City of New Orleans
Employees' Ret. Sys. ex rel. BP P.L.C. v. Hayward, 508 F. App'x
293, 296 (5th Cir. 2013); see also Saqui, 595 F.3d at 210 ("Fifth
Circuit law has consistently held that when a defendant submits
to the jurisdiction of an alternate forum, that renders the forum
available for purposes of FNC analysis.").

To dismiss a case for *forum non conveniens* a court must
establish that the defendants are amenable to process in the
alterative forum. In re BP Shareholder Derivative Litig., No.

10-MD-2185, 2011 WL 4345209, at *6 (S.D. Tex. Sept. 15, 2011)
aff'd sub nom. City of New Orleans Employees' Ret. Sys. ex rel.
BP P.L.C. v. Hayward, 508 F. App'x 293 (5th Cir. 2013). Neither
party has addressed the availability of Germany as a forum or the
Defendants' amenability to process there. Courts in this circuit
sometimes condition dismissal for *forum non conveniens* on
defendants stipulating that they will submit to the jurisdiction
of the foreign court. See, e.g., id. However, this practice
pre-dates Atlantic Marine, and it is not clear that such
conditions are required in a case involving a forum-selection
clause.

In light of the mandatory forum-selection clause providing
for jurisdiction in Frankfurt, Germany, and Defendants' argument
that the clause applies to claims against both SAP AG and SAP
America, the court is satisfied that Defendants have consented to
the jurisdiction of the German courts. The court is not inclined
to delay the resolution of this matter by imposing conditions on
dismissal. However, should Wellogix have a good-faith argument
that SAP AG or SAP America is not amenable to process in Germany,
the court may reconsider and condition dismissal on an
appropriate stipulation. Barring a good-faith showing to the
contrary, the Court finds that German courts provide an available
alternative forum in which to proceed with this case.

### 2. Adequacy

An alternative forum is adequate "when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court." In re Air Crash Disaster, 821 F.2d at 1165 (citing Piper, 102 S. Ct. at 265; Syndicate 420 at Lloyd's London v. Early Am. Ins. Co., 796 F.2d 821, 829 (5th Cir. 1986)). Although neither party has addressed the adequacy of Germany as a forum, a party moving to dismiss for forum non conveniens "may rely on a presumption that the foreign forum is adequate." Indusoft, Inc. v. Taccolini, 560 F. App'x 245, 249 (5th Cir. 2014). "The substantiative law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." DTEX, LLC v. BBVA Bancomer, S.A., 508 F.3d 785, 796 (5th Cir. 2007) (internal quotation marks and citation omitted). Because Wellogix has made no showing to the contrary, the court presumes that Germany is an adequate alternative forum. Furthermore, the parties expressly agreed to both a German forum and the application of German law. The court sees no injustice in holding the parties to their bargain.

-29-

## 3. Balancing of Interests

Atlantic Marine modified the typical *forum non conveniens* analysis for cases involving a forum-selection clause. Because such a clause "represents the parties' agreement as to the most proper forum," the plaintiff's choice of forum "merits no weight," and a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atlantic Marine, 134 S. Ct. at 581–82. Thus a court may only consider arguments about public-interest factors.[62] Id. at 582. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id. at 583. "[S]uch cases will not be common." Id.

SAP points to a number of public-interest factors favoring dismissal.[63] However, under Atlantic Marine, the party *resisting* enforcement has the burden of showing that public-interest factors "overwhelmingly disfavor" dismissal. Id. Because Wellogix has made no showing that public-interest factors disfavor dismissal, it has not met its burden under Atlantic

[62] "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" Atlantic Marine, 134 S. Ct. at 581 n.6 (2013) (quoting Piper, 102 S. Ct. at 258 n.6).

[63] See Motion for Summary Judgment, Case No. H-14-741, Docket Entry No. 8, pp. 26–27.

-30-

<u>Marine</u>. This is not an "unusual case," and the forum-selection clause should control.

### III. **Conclusions and Order**

For the reasons stated above, Defendants SAP America, Inc.'s and SAP AG's Motion for Summary Judgment is **GRANTED**. However, this court may reassert jurisdiction upon timely notification if the courts of Germany refuse to accept jurisdiction for reasons other than Wellogix's refusal to pursue an action or to comply with the procedural requirements of German courts. The court retains jurisdiction to supervise the terms of this dismissal.

**SIGNED** at Houston, Texas, on this 10th day of November, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE